Gilberto Gierbolini, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El 26 de enero de 1998, un grupo de comerciantes participantes del Programa Federal de Alimentación Suplementaria para Mujeres y Niños (WIC), presentaron ante este Tribunal un recurso de apelación. A través del mencionado recurso solicitan la revocación de la sentencia sumaria emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 24 de noviembre de 1997. Mediante dicha sentencia el tribunal a quo declaró Sin Lugar la demanda en solicitud de sentencia declaratoria, injunction y daños y perjuicios que fuera instada contra el Departamento de Salud, Programa WIC por los aquí apelantes. El 26 de febrero de 1998, el Procurador General, en representación del Departamento de Salud, compareció ante nos y presentó su alegato en oposición a la apelación solicitada. Luego de estudiar y analizar los documentos sometidos y el derecho aplicable, procedemos a CONFIRMAR la sentencia apelada.
I
El Departamento de Salud tiene la encomienda de administrar en Puerto Rico el WIC, establecido por el Congreso de los Estados Unidos en el año 1972.
Los aquí apelantes son comerciantes autorizados por el Programa WIC para vender en sus negocios los alimentos a los participantes del programa. Por la naturaleza de este programa, todos los comercios participantes autorizados deben cumplir toda la reglamentación federal pertinente. El Departamento de Salud tiene la obligación de fiscalizar y supervisar el cumplimiento de los reglamentos y la ley por *656 los negocios participantes.
Durante varios años, el precio del paquete de alimentos en Puerto Rico fue uno de los más altos en comparación con los estados de los Estados Unidos, esto afectaba la cantidad de personas que WIC podía atender. En varias ocasiones el gobierno federal requirió al WIC en Puerto Rico el seleccionar comerciantes que ofrecieran precios más bajos. En respuesta a estos requerimientos federales, el Departamento de Salud de Puerto Rico implantó un nuevo plan para el WIC.
Bajo este nuevo plan cada comerciante interesado tenía la oportunidad de competir para ser seleccionado como comercio autorizado, cotizando los precios de los productos. De este grupo serían seleccionados los que ofrecieran precios más bajos. Los comercios que no sometieran una lista de precios tenían la opción de ser seleccionados si igualaban los precios de los productos según la selección de los comercios que habían cotizado. Con el propósito de dar a conocer a los comercios participantes en el nuevo plan implantado, fue celebrada una reunión a la que asistieron los aquí apelantes.
Durante el proceso de selección, los comerciantes aquí apelantes decidieron no someter una lista de precios. Por lo tanto, de acuerdo al nuevo plan, el Departamento de Salud les envió la lista de los precios promedios para que éstos la igualaran. Al recibir la lista de precios, los aquí apelantes presentaron objeciones. Ante las objeciones, el Departamento de Salud revisó y ajustó la lista y nuevamente la presentó a los comerciantes. Los comerciantes volvieron a objetar los precios, pero el Departamento de Salud decidió no volver a revisar la lista. Así las cosas, los comerciantes procedieron a firmar sus contratos con el WIC.
Como parte del nuevo programa implantado, el Departamento de Salud comenzó a cobrar a los comerciantes sobrecargos por la cantidad facturada al programa en exceso de los precios acordados.
El 27 de mayo de 1997, los comerciantes presentaron una demanda ante el Tribunal de Primera Instancia y solicitaron fuera declarada ilegal la acción del Departamento de Salud al establecer la lista de precios que debían estos cobrar por los productos que despachaban en sus negocios a los participantes del WIC. Además, solicitaron una orden de injunction preliminar para paralizar el cobro de sobrecargos hasta tanto fuera emitida una determinación en los méritos sobre la controversia que habían planteado.
El 3 de septiembre de 1997, el Estado Libre Asociado de Puerto Rico y el WIC, Departamento de Salud, solicitaron la desestimación de la demanda. Estos alegaron que no existían las circunstancias necesarias para que fuera expedido un injunction, que los aquí apelantes no habían agotado los remedios administrativos y que no habían acumulado una parte indispensable. El 18 de septiembre de 1997, los comerciantes presentaron su oposición a la solicitud de desestimación. La parte aquí apelada sometió una réplica a este último escrito.
El 24 de noviembre de 1997, el Tribunal de Primera Instancia emitió sentencia sumaria. En la misma el tribunal concluyó que el "Food and Consumer Services" del Departamento de Agricultura Federal no era parte indispensable en la acción incoada. Además, concluyó que no existían los requisitos para que fuera emitido un injunction y que los comerciantes no agotaron los remedios administrativos.
El 26 de enero de 1998, los comerciantes presentaron recurso de apelación ante este Tribunal. En el referido escrito sostienen que existen los requisitos necesarios para que sea emitido un injunction, que el tribunal erró al emitir sentencia sumaria. Además, que los procesos ante el Tribunal de Primera Instancia afectaron su derecho a un debido proceso de ley y a una adjudicación imparcial. El 26 de febrero de 1998, el Procurador General, en representación del Departamento de Salud, compareció ante este Tribunal y expresó que no procedía la expedición del injunction, que el tribunal actuó correctamente el emitir sentencia sumaria en el caso y que el aquí apelante debió dilucidar la controversia en el foro administrativo antes de acudir al tribunal.
II
Una orden de injunction preliminar, que prohibe un acto, evita que la conducta del demandado *657 ocasione daños al peticionario durante la duración del pleito, Municipio de Ponce v. Hon. Pedro Rosselló y otros, _ D.P.R. _ (1994), 94 J.T.S. 112. El injunction preliminar podrá ser emitido luego de la celebración de una vista donde las partes envueltas en el litigio hayan presentado prueba en apoyo y en oposición al mencionado remedio. El peticionario de un injunction preliminar tiene el peso de demostrar su procedencia, Puerto Rico Telephone Co. v. Tribunal Superior, 103 D.P.R. 200 (1975).
La concesión de un injunction preliminar es un ejercicio discrecional del tribunal. El tribunal no está obligado a emitir una orden de injunction preliminar si entiende, a través del estudio de las circunstancias particulares del caso y del análisis de los intereses de las partes envueltas, que no es meritorio así hacerlo. Misión Industrial de P.R., Inc. y otros v. Junta de Planificación de P.R. v Autoridad de Acueductos y Alcantarillados, _ D.P.R. _ (1997), 97 J.T.S. 34 (1997).
Según ha sido establecido por el Tribunal Supremo de Puerto Rico, un tribunal debe analizar ciertos criterios antes de decidir sobre la expedición de un injunction preliminar. Estos criterios son: (1) la naturaleza de los daños que puedan ser ocasionados a las partes de no ser concedido el injunction, (2) la irreparabilidad del daño y la existencia de un remedio adecuado en ley, (3) la probabilidad de que la parte promovente prevalezca eventualmente en el litigio, (4) la probabilidad de que la causa se tome académica y (5) el posible impacto sobre algún interés público, Misión Industrial de P.R., Inc. y otros v. Junta de Planificación de P.R. y Autoridad de Acueductos y Alcantarillados, supra.
Dos de los criterios a ser analizados por un tribunal que tenga ante sí una solicitud de injunction preliminar lo son los alegados daños ocasionados y balancear los intereses en conflicto. El interés que los aquí apelantes presentan y los alegados daños que éstos señalan quedan circunscritos a la obligación impuesta de vender en sus negocios los alimentos al precio establecido por el Departamento de Salud por lo que, según ellos, no obtienen buenas ganancias. Además, los apelantes sostienen que la imposición de los precios conjuntamente con el cobro de sobrecargos significa una amenaza a que ellos continúen operando sus negocios.
Frente a estas alegaciones, el estado levanta intereses de gran embergadura. El propósito del WIC es que un mayor número de mujeres embarazadas o lactantes y un mayor número de niños reciban los alimentos que necesitan, ello así mediante un manejo adecuado de los fondos federales asignados. Ante el interés económico de los aquí apelantes, existe la necesidad de sostener una sana política pública del estado y los fines y propósitos del WIC. Al realizar el debido balance de intereses, no es posible sostener el interés económico de los aquí apelantes frente al interés estatal de brindar ayuda y alimentos a las mujeres y niños de escasos recursos.
Los alegados daños sufridos por los apelantes acontecen como consecuencia de las actuaciones del Departamento de Salud bajo las medidas impuestas por el nuevo plan. Las medidas tomadas por los apelados, tales como, la condición de los comerciantes de ofrecer una cotización por los productos o de igualar los precios de los alimentos según el promedio de precios establecidos y el cobro de sobrecargos fueron debidamente explicadas a los comerciantes interesados en participar del programa. Los aquí apelantes tuvieron conocimiento de la opción de presentar sus cotizaciones. Al no presentar sus cotizaciones, y por estar interesados en seguir siendo comercios autorizados por el WIC, por sus propios actos optaron por la condición de igualar los precios según éstos quedaran establecidos por aquellos que sí presentaron sus cotizaciones. La solicitud de los apelantes de que las actuaciones del Departamento de Salud, por ellos conocidas y aceptadas, sean declaradas ilegales no es posible concederla.
Los criterios de la irreparabilidad del daño sufrido, la existencia de un remedio adecuado en ley, la probabilidad de que la acción pasara a ser académica y de que la parte peticionaria prevaleciera en el litigio fueron criterios considerados por el Tribunal de Primera Instancia al momento de decidir emitir o no el injunctidn. Al examinar la sentencia del tribunal a quo, concluimos que no hubo abuso de discreción en las consideraciones y conclusiones a que éste llegó.
ni
La Ley de Procedimiento Administrativo Uniforme, Ley Número 170 de 12 de agosto de 1988, 3 *658 L.P.R.A. Sección 2101 et. seq., según enmendada, establece que la parte afectada por una decisión de una agencia deberá impugnar tal decisión ante dicha agencia y agotar los procedimientos administrativos disponibles antes de acudir al foro judicial. Específicamente la Sección 2172 de la mencionada ley dispone en lo pertinente:

"Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia..."

La doctrina de agotamiento de remedios postula la abstención del foro judicial sobre controversias que aún no han recorrido todo el trámite administrativo establecido, Colón v. Méndez, _ D.P.R. _ (1992), 92 J.T.S. 51.
En el caso de autos existe reglamentación federal que provee un proceso de revisión para que los comerciantes autorizados por WIC y afectados adversamente por decisiones de la agencia puedan plantear sus alegaciones y que éstas sean consideradas por la misma agencia. La Reglamentación Federal del Food and Consumer Service, USDA, 7 CFR Sección 246.18 señala el derecho del comerciante a apelar la decisión que le afecta. Entre otras cosas, la mencionada sección establece lo siguiente:

"(a) Requirements. The State agency shall provide a hearing procedure whereby a food vendor or local agency adversely affected by a State or local agency action may appeal the action.

(1)The right of appeal shall be granted when a local agency's or a food vendor’s application to participate is denied or, during the course of the contract or agreement, when a local agency or vendor is discualified or any other adverse action which affects participation is taken. Expiration of a contract or agreement with a food vendor or local agency shall not be subject to appeal.

(2)The adverse action affecting a participating local agency shall be postponed until a hearing decision is reached.

(3)The State agency may take adverse action against a vendor after the 15-day advance notification period mandated by paragraph (b)(1) of this section has elapsed. In deciding whether or not to postpone adverse action until a hearing decision is rendered, the State agency shall consider whether participants would be unduly inconvenienced and may consider other relevant criteria, determined by the State agency."

El foro judicial no debe intervenir en el presente caso en cumplimiento de la doctrina de agotamiento de remedios administrativos.
IV
Por los fundamentos antes expuestos, procedemos a CONFIRMAR la bien elaborada sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General